# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN PAUL WEBER, III,

:

    Petitioner,                                  Case No. 3:10-cv-49

:          District Judge Walter Herbert Rice

   -vs-                                        Magistrate Judge Michael J. Newman

WARDEN, Warren Correctional       :
Institution,

    Respondent.                          :

## REPORT AND RECOMMENDATION[1]

Pursuant to 28 U.S.C. § 2254, Petitioner John Paul Weber, III ("Petitioner" or "Weber") brings this petition for a writ of *habeas corpus*. In April 2007, Petitioner was convicted of kidnapping, robbery, murder, tampering with evidence, and obstructing justice in the Montgomery County Court of Common Pleas. Doc. 5-1 at PageID 73. This matter is before the Court on Petitioner's *habeas* petition (doc. 1) and Respondent's Return of Writ (doc. 5), as supplemented by Respondent in response to this Court's Order (doc. 10).

Proceeding *pro se*, Petitioner pleads four grounds for relief:

**GROUND ONE**: Right to confront witness against Petitioner in violation of the Sixth Amendment to the United States Constitution.

**Supporting facts**: While cross-examining Cynthia Ryan at Petitioner's trial, Petitioner learned that the witness had used a transcript of her grand jury testimony to refresh her recollection prior to testifying at trial. Petitioner requested [the] trial

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

court to allow for a review of said grand jury testimony to determine whether it was inconsistent with her trial testimony. The trial court's refusal denied Petitioner the right to confront the witness against Petitioner.

**GROUND TWO**: The trial court erred when it overruled Petitioner's request for a jury instruction on intervening and superceding causes of death.

**Supporting facts**: At the conclusion of Petitioner's trial, Petitioner requested a jury instruction on intervening and superceding causes of death. In support, Petitioner claimed that co-defendant's act of throwing a rock on victim was "totally out of the blue," and unexpected by anyone involved. The State asserted that it was foreseeable that someone would pick up something like a rock, during a brawl, and use it as a weapon. The trial court abused its discretion in denying Petitioner's request.

**GROUND THREE**: Petitioner's due process rights under the 14th Amendment were violated by the State's failure to prove all elements of the crime.

**Supporting facts**: Petitioner maintains that his kidnapping convictions must be vacated because they are unsupported by sufficient evidence. Petitioner also claims that the murder convictions premised upon kidnapping must be reversed because the State failed to prove that kidnapping was the proximate cause of the victim's death.

**GROUND FOUR**: State failed to introduce sufficient evidence to prove all elements of obstructing justice in violation of the 14th Amendment.

**Supporting facts**: Petitioner was interviewed by the detectives after the victim's death. Detectives showed Petitioner a photo spread whom the police believed might have shown the person responsible for the murder. Petitioner identified a person whom he had been with earlier, but subsequent conversations confirmed that the Petitioner had made a mistake, but was charge[d] with obstruction.

Doc. 1 (brackets added).

## I. FACTUAL BACKGROUND

On July 9, 2006, Dayton Police Officer Douglas Brandenburg found a man -- whom he recognized as Myreon Mazur, nicknamed Chico ("Mazur") -- in the grass outside a house on Quitman Avenue. Doc. 5-1 at PageID 178. Mazur told Officer Brandenburg that he was dying. *Id.* Mazur was transported to the hospital and pronounced dead shortly thereafter. *Id.* An autopsy

revealed "abrasions and contusions on the face, left hand, and left shoulder," as well as "tears in his liver, small intestine, and pancreas as well as three broken ribs." *Id.* It was determined that "Mazur bled to death as result of those internal injuries, which were caused by blunt force trauma to the abdomen." *Id.* Over the course of an investigation, the police determined that multiple individuals were involved in the beating and death of Mazur, including Defendant. *Id.* at PageID 179.[2]

## II. PROCEDURAL HISTORY

In August 2006, Petitioner and three co-defendants were indicted on multiple counts related to Mazur's beating and death. Doc. 5-1 at PageID 65-68. Petitioner moved to sever party defendants, and the trial court granted his motion. *Id.* at PageID 70-72.

Following a five-day trial in April 2007, the jury found Petitioner guilty of two counts of kidnapping, and one count each of robbery, murder, tampering with evidence, and obstructing justice. *Id.* at PageID 73. On May 3, 2007, Petitioner was sentenced to nineteen years to life imprisonment. *Id.*

### A. Direct Appeal

With the assistance of counsel, Petitioner timely appealed his conviction and sentence, raising six assignments of error:

  I.  The verdict should be reversed because the trial court erred when it overruled Appellant's motion to inspect the Grand Jury testimony of Cynthia Ryan.

  II. The verdict should be reversed because the trial court erred when it overruled Appellant's request for a jury instruction on intervening and superceding causes of death.

---

[2]On Petitioner's direct appeal from his state criminal conviction, the Ohio Court of Appeals set forth more detailed factual findings. *See* doc. 5-1 at PageID 178-80. These findings are presumed to be correct unless Petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001). He has not done so. *See infra*.

> III. The verdict should be reversed because the State failed to introduce sufficient evidence to prove all the elements of kidnapping thereby denying Appellant his right to due process of law under the Fourteenth Amendment to the United States Constitution.
>
> IV. In the alternative, Appellant's kidnapping convictions should be reversed because the State failed to meet its burden of proving all elements of the crime beyond reasonable doubt and, therefore, the conviction is against the manifest weight of the evidence.
>
> V. The State failed to introduce sufficient evidence to prove all the elements of obstructing justice thereby denying the Appellant his right to due process of law under the Fourteenth Amendment to the United States Constitution.
>
> VI. In the alternative, Appellant's obstructing justice conviction must be reversed because the State failed to meet its burden of proving all elements of the alleged crime beyond a reasonable doubt and, therefore, the conviction is against the manifest weight of the evidence.

*Id.* at PageID 80 (citations omitted) (capitalization altered). The Ohio Court of Appeals overruled all of the assignments of error, affirming his conviction and sentence. *State v. Weber*, No. 22167 (Ohio Ct. App. 2d Dist. Aug. 8, 2008); Doc. 5-1 at PageID 177-91. Petitioner then filed a *pro se* motion for reconsideration in the Ohio Court of Appeals, doc. 5-1 at PageID 194-207, which was denied on February 2, 2009. *State v. Weber*, No. 22167 (Ohio Ct. App. 2d Dist. Feb. 2, 2009); Doc. 5-1 at PageID 208-10.

Petitioner timely appealed the Court of Appeals' decision to the Ohio Supreme Court, raising the same arguments that he did on direct appeal to the Ohio Court of Appeals. *See* doc. 5-1 at PageID 213-21. The Ohio Supreme Court declined to hear the appeal, finding it did not involve any substantial constitutional question. *State v. Weber*, No. 2008-1841 (Ohio Jan. 28, 2009); Doc. 5-1 at PAGED 237.[3]

---

[3]In addition, Petitioner filed two *pro se* petitions for post-conviction relief, doc. 5-1, at PageID 238-41, 263-80, which were both denied. *State v. Weber*, No. 2006 CR 3172-1 (Montgomery Cnty. Ct. C.P. June 26, 2008); Doc. 5-1, at PageID 258-62. *State v. Weber*, No. 2006 CR 03172/1 (Montgomery Cnty. Ct. C.P. Aug.

The State concedes that all of Petitioner's *habeas* claims were properly exhausted in state court. *See* doc. 5 at PageID 37.

## II.  ANALYSIS

### A.  AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

A state court decision is considered "contrary to . . . clearly established Federal law" when it is "diametrically different, opposite in character or nature, or mutually opposed." *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (citation omitted). To be deemed "an unreasonable application of . . . clearly established Federal law," a state court's decision must be "'objectively unreasonable,' not simply erroneous or incorrect." *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009*)* (citation omitted). Further, under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence. *Id.* This statutory presumption of correctness also extends to factual findings made by state appellate courts' review of trial court records. *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003)*.*

---

18, 2008); Doc. 5-1, at PageID 306-14. Petitioner did not appeal either of these rulings. Further, Petitioner filed an application to re-open his appeal pursuant to Ohio App. R. P. 26(B), doc. 5-1 at PageID 315-27, which the Court of Appeals denied. *State v. Weber*, No 22167 (Ohio Ct. App. 2d Dist. Nov. 21, 2008); Doc. 5-1, at PageID 328- 31. Petitioner did not appeal the denial of his App. R. P. 26(B) application. These state court proceedings are not relevant to Petitioner's current *habeas* petition.

A *habeas* court cannot review a constitutional claim on the merits unless the petitioner previously presented the claim to the state's highest court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45, 848 (1999). Thus, if (1) the state court rejected the petitioner's claim based on his or her failure to comply with the state procedural rules, or (2) the petitioner failed to exhaust his or her state court remedies and no avenue of relief remains open, or it would otherwise be futile to pursue the state remedies, the petitioner has waived that claim for *habeas* review under the procedural default doctrine. *In re Abdur'Rahman*, 392 F.3d 174, 186-87 (6th Cir. 2004) (overruled on other grounds).

### B. Ground One

In Ground One, Petitioner argues that his Sixth Amendment Confrontation Clause rights were violated. During Petitioner's criminal trial, Cynthia Ryan, a witness for the State, testified that she reviewed her grand jury testimony before trial to refresh her recollection. *See* doc. 5-3 at PageID 503-05. Petitioner's counsel then requested to view the grand jury transcript. *See id.* at PageID 506-12. In response to that request, the trial court conducted an *in camera* review of the transcript, and concluded that there were only minor inconsistencies between Ryan's trial testimony and her grand jury testimony. *See id.* Therefore, the trial court denied Petitioner's request. *Id.* at PageID 513-14. However, the trial court did permit Petitioner's counsel to cross-examine Ryan regarding a prior inconsistent statement she made to the police. *Id.* at PageID 514. Petitioner argues that, by so ruling, the trial court violated his right to confront witnesses.

On direct appeal, the Ohio Court of Appeals held that the trial court did not err in refusing to allow Petitioner's counsel to review Ryan's grand jury testimony. Doc. 5-1 at PageID181-83. Additionally, the Ohio Court of Appeals noted that -- having found only trivial discrepancies in

reading Ryan's grand jury testimony -- any possible error was harmless. *See* doc. 5-1 at PageID 182-83.

To obtain *habeas corpus* relief, Petitioner must show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, __ U.S. __, 132 S. Ct. 26, 27 (2011) (citation omitted). Accordingly, "[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the U.S. Supreme] Court." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (brackets added) (citation omitted).

The Confrontation Clause encompasses two rights: "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Here, Petitioner argues that the trial court violated the latter by denying him access to the grand jury testimony and thereby interfering with his ability to impeach a prosecution witness. *See* doc. 1 at PageID 5. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Indeed, the trial court has discretion to place reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A trial court's limitation on cross-examination violates the Confrontation Clause only when "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had . . . counsel been permitted to purse his proposed line of cross-examination." *Id.* at 680.

The Court is unaware, nor has either party cited to, Supreme Court case law suggesting that

Petitioner's Confrontation Clause rights were violated during his trial.[4] To the contrary, when facing similar facts, the Supreme Court, in a plurality opinion, declined to find a constitutional violation. *See Ritchie*, 480 U.S. at 53-54. There, a criminal defendant argued that his right of cross-examination was violated when a child protective service agency refused to comply with a subpoena and turn over its confidential records to him, claiming the records were privileged under state law. *Id.* at 43-46. The Supreme Court rejected the defendant's argument -- that his confrontation rights were violated -- stating, "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53. In so holding, the Court emphasized that the trial court had not restricted in any manner the counsel's opportunity to cross-examine all of the witnesses. *See id.* at 54.[5]

Likewise, the Sixth Circuit recently refused to grant *habeas* relief and find a Confrontation Clause violation under similar circumstances. *See Middlebrooks v. Bell*, 619 F.3d 526, 541-43 (6th Cir. 2010). In *Middlebrooks*, the trial court denied defendant's request to examine a witness' psychiatric hospital records for impeachment purposes, and also denied the request to conduct an *in camera* inspection of those records. *Id.* at 541. Defendant was given a full opportunity to cross-examine the witness, and was allowed to ask about the hospital records in question, however. *Id.* at 542. The Sixth Circuit held, "[i]t is clear . . . that for now there is no clearly established federal

---

[4]Petitioner did not cite to any Supreme Court cases in support of Ground One in his *habeas* petition, *see* doc. 1 at PageID 5, and he did not file a Traverse/Reply.

[5]The Supreme Court has long upheld the secrecy of grand jury proceedings. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-84 (1958). A criminal defendant that requests a copy of grand jury proceedings must show a "particularized need" that outweighs the long-established policy of secrecy. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398-401 (1959); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233-34 (1940).

law indicating that the trial court's failure to order disclosure of [the witness'] hospital records violated [the defendant's] confrontation rights." *Id.* at 542-43. The court also emphasized that the defendant's trial counsel "received wide latitude to question" the witness. *Id.* at 543.

In light of the above-cited case law, the Court finds that Petitioner's Confrontation Clause rights were not violated. Petitioner's trial counsel was given a full opportunity to cross-examine Ryan. Doc. 5-3 at PageID 458-505. In fact, the trial court specifically allowed Petitioner's counsel to cross-examine Ryan regarding a prior inconsistent statement she made to the police. *Id.* at PageID 515-17.

Alternatively, the Court finds that Ground One fails because Petitioner cannot survive harmless error analysis -- by showing that his inability to use the grand jury transcript to impeach Ryan had a "substantial and injurious effect or influence in determining the jury's verdict." *Jordan v. Hurley,* 397 F.3d 360, 363-64 (6th Cir. 2005). Having carefully reviewed Ryan's grand jury testimony and compared it to her trial testimony, *compare* doc. 10 at PageID 1360-72 *with* doc. 5-3 at PageID 433-517, the Court agrees with the assessment of the trial court and the Ohio Court of Appeals -- that the discrepancies, if any, between Ryan's grand jury and trial testimony are trivial. *See* doc. 5-1 at PageID 183; doc. 5-3 at PageID 513-14.[6] Further, Petitioner's trial counsel impeached Ryan on other grounds. *See* doc. 5-3 at PageID 515-17. Therefore, Petitioner's claim also fails under the harmless error analysis.

---

[6]The grand jury transcript was not initially filed with this Court, as Ohio law only permits the release of grand jury testimony in certain circumstances, including pursuant to a Court Order. *See* Ohio R. Crim. P. 6(E). In order to properly review Petitioner's claim, the Court ordered the Montgomery County Prosecutor to release the grand jury transcript, and Respondent to file the transcript under seal with this Court. Doc. 7. Pursuant to the Court's Order, the grand jury transcript was filed under seal with this Court on December 14, 2011. *See* doc. 10.

For the reasons stated above, the Court finds that Ground One should be dismissed.

## C. Ground Two

In Ground Two, Petitioner contends that the trial court abused its discretion by failing to include jury instructions regarding intervening and superseding causes of death. *See* doc. 1 at PageID 6. He argues that the act of Shawn Taylor (another individual involved in the murder) -- *i.e.,* throwing a rock on Mazur -- was a superseding cause of death, and the jury should have been instructed accordingly. *See id.*

To obtain *habeas* relief based on incorrect jury instructions, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The standard on *habeas* review is "highly demanding" -- erroneous jury instructions violate "fundamental fairness" only in very narrow circumstances. *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000). Further, "[a]n omission, or an incomplete instruction, is less likely to be prejudiced than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Upon a review of this claim, the Ohio Court of Appeals held that the trial court did not abuse its discretion in denying Petitioner's request to include a specific jury instruction on superseding and intervening causes. Doc. 5-1 at PageID 183-85. The Ohio Court of Appeals concluded that the jury instruction regarding proximate cause -- (1) defining "cause" as "an act or failure to act which in the natural and continuous sequence directly produces the death and without which it would not have occurred" and (2) explaining that "[p]roximate result means that the death must be the direct natural reasonably foreseeable consequence of the defendant's conduct as opposed to an extraordinary or surprising consequence viewed in the light of ordinary experience" -- adequately addressed

intervening and superseding causes. *See id.* at PageID 184. Moreover, the Ohio Court of Appeals held that Petitioner's kidnapping and beating of the victim was, in fact, a proximate cause of Mazur's death, and a superseding and intervening cause instruction was therefore unwarranted. *See id.* at PageID 184-85.

The Court finds that the trial court's decision -- to not expressly instruct the jury regarding superseding and intervening causes of death -- was reasonable, and did not "so infect[] the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Therefore, the state appellate court's decision -- finding no constitutional violation in this regard -- was neither contrary to nor an unreasonable application of Supreme Court precedent, and Ground Two should be dismissed.

### D.  Grounds Three and Four

Grounds Three and Four raise several insufficiency-of-the-evidence claims. In Ground Three, Petitioner argues there was insufficient evidence to support his kidnapping and felony murder convictions. Doc. 1 at PageID 8. In Ground Four, Petitioner argues that his obstructing justice conviction is likewise unsupported by sufficient evidence. *Id.* at PageID 9.

Under the Due Process Clause of the Fourteenth Amendment, a criminal conviction must be supported by sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 314-15 (1979). The test for constitutionally sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Moreover, under AEDPA

deference, even where a *habeas* court concludes that the *Jackson* standard was not satisfied, it must still defer to the state appellate court's decision as long as it is reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

**1.     Kidnapping and Murder Convictions**

The Ohio Court of Appeals rejected Petitioner's insufficiency-of-the-evidence challenges to his kidnapping and murder convictions as follows:

> In his Third and Fourth Assignments of Error, Weber maintains that his Kidnapping convictions must be vacated because they are against the manifest weight of the evidence and are unsupported by sufficient evidence. He also insists that his Murder conviction premised upon Kidnapping must be vacated because the State failed to prove that Kidnapping was the proximate cause of Mazur's death. We disagree.
> 
> A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1 997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259,574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
> 
> In contrast, when reviewing a judgment under a manifest weight standard of review"[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." *Thompkins*, supra, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 7171.
> 
> Weber was convicted of Kidnapping under both R.C. 2905.01(A)(2) and 2905.01(A)(3), which prohibit one from removing a person from the place where he is found or restraining him of his liberty by force, threat, or deception, either for the purpose of terrorizing or inflicting serious physical harm or to facilitate the commission of any felony, in this case Robbery.

-12-

The evidence showed that earlier in the day, Weber and Taylor had threatened Mazur's life if he returned to the Quitman address. As soon as Weber and Taylor learned that Mazur had returned, they both headed to Quitman. Once there, Taylor grabbed Mazur in a choke hold, dragged him out of the house and threw him on the ground, where Weber repeatedly kicked Mazur. Taylor also punched and kicked Mazur, and then hurled a large rock into Mazur's abdomen. By accompanying Taylor to the Quitman address to confront Mazur, after having threatened his life earlier in the day, and by actively participating in the beating of Mazur after Taylor dragged him outside the house, Weber restrained Mazur of his liberty for the purpose of aiding in the infliction of serious physical harm.

When Mazur got up in an attempt to run away from his attackers, Weber and others tackled the severely injured Mazur into a fence, and held him there while they removed all of his clothing and rifled his pockets looking for money and drugs, preventing Mazur from being able to promptly seek medical attention for his life-threatening injuries. Hours later, Mazur died from those injuries. Thus, Weber restrained Mazur of his liberty in order to facilitate the robbery.

Furthermore, as discussed in response to Weber's Second Assignment of Error, Weber's active participation in the kidnapping, beating, and robbery of Mazur was a proximate cause of Mazur's death. At no point did Weber attempt to distance or extricate himself from the crimes committed against Mazur. To the contrary, Weber was an active participant throughout all of the events that day. The State's evidence was sufficient to prove the Kidnapping and Murder charges, and the jury did not lose its way in choosing to believe the State's witnesses.

Doc. 5-1 at PageID 185-88.

As Petitioner has not rebutted the state court's factual findings with clear and convincing evidence, *accord supra* n. 1, AEDPA requires this Court to accept those findings as accurate. 28 U.S.C. § 2254(e)(1); *Clark*, 257 F.3d at 506. Based on the state court's recitation of evidence supporting Petitioner's kidnapping and felony murder convictions, the Court finds there was sufficient evidence for a rational trier of fact to conclude that he was guilty of those offenses.

Further, this Court has also independently reviewed the record, and is not persuaded otherwise. State witnesses testified that they saw Petitioner and Taylor physically force Mazur from the house on Quitman Avenue -- by dragging and hitting him, while he was in a choke hold. *See* doc. 5-3 at PageID 443-44; doc. 5-4 at PageID 812-14. There was also testimony that Petitioner and

Taylor inflicted serious physical harm on Mazur once they dragged him out of the house. *See* doc. 5-3 PageID 448-53, 580-81; doc. 5-4 at PageID 812-13. Thus, in light of such evidence, a rational jury could conclude that Petitioner was guilty of kidnapping under Ohio Rev. Code § 2905.01(A)(3) -- for restraining the liberty of Mazur by force in order "to inflict serious physical harm" on him. Ohio Rev. Code § 2905.01(A)(3) (2006).

Similarly, there was sufficient evidence for a rational jury to conclude that Petitioner was guilty of kidnapping under Ohio Rev. Code § 2905.01(A)(2) -- for restraining Mazur's liberty by force to facilitate the commission of a felony (robbery). Ohio Rev. Code § 2905.01(A)(2) (2006). First, there was eyewitness testimony that Mazur attempted to escape, but Petitioner and Taylor tackled him against a fence and would not allow him to leave -- showing that Petitioner restrained Mazur's liberty by force. *See* doc. 5-3 at PageID 585; doc. 5-4 at PageID 926-27. Second, there was evidence that Petitioner did so in order to commit a robbery.[7] Witnesses testified that, while Mazur was pinned against the fence, Petitioner and Taylor went through Mazur's pockets, took off his clothes, and stole his shoes. *See* doc. 5-3 at PageID 585-86; doc. 5-4 at PageID 482-83, 819, 743-44.

Additionally, Petitioner's contention that there was insufficient evidence to convict him of felony murder is unpersuasive. The jury reasonably concluded that Petitioner was guilty of kidnapping and his acts proximately caused Mazur's death. Thus, there was sufficient evidence to convict him of felony murder under Ohio Rev. Code § 2903.02(B).[8]

---

[7]Petitioner was convicted of robbery under Ohio Rev. Code § 2911.02(A)(2): "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall . . . [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Doc. 5-1 at PageID 65.

[8]Petitioner was convicted of murder under Ohio Rev. Code § 2903.02(B): "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence

## 2. Obstructing Justice Conviction

Petitioner also challenges his obstructing evidence conviction. When law enforcement asked Petitioner to identify the individual that committed the crimes against Mazur in a photo spread, Petitioner falsely identified the wrong man. *See* doc. 5-1 at PageID 189-91. As a result, Petitioner was convicted of obstructing justice under Ohio Rev. Code § 2921.32(A)(5), which provides that "no person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime . . . shall . . . [c]ommunicate false information to any person." Ohio Rev. Code § 2921.32(A)(5) (2006). In his *habeas* petition, Petitioner states that he made a mistake in misinforming the police, and therefore should not have been convicted of obstructing justice. Doc. 1 at PageID 9.

The Ohio Court of Appeals rejected Petitioner's claim as follows:

> In his final two assignments of error, Weber contends that his Obstructing Justice conviction is against the manifest weight of the evidence and is unsupported by sufficient evidence. We disagree.
> Weber was convicted of Obstructing Justice in violation of R.C. 2921.32(A)(5), which prohibits the communication of false information to law enforcement with a purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for a crime. See, also, *State v. Bailey* (1994), 71 Ohio St,3d 443, 448, 644 N.E.2d 314 (making an unsworn, false statement to a law enforcement officer with the purpose of hindering the officer's investigation of a crime is conduct that is punishable within the meaning of R.C. 2921.32(A)(5)).
> Detectives first interviewed Weber the day after Mazur's death. During that interview, detectives showed him a photo spread that included Shawn Days, whom the police believed might have been the Shawn involved in these crimes. Weber knew Days and immediately incorrectly identified him as the Shawn in question. Subsequent conversations with Weber confirmed that he had not made a mistake, but that he was intentionally pointing police toward Days, who looked nothing like Taylor. With the help of other witnesses, police learned that it was Shawn Taylor that had been involved. Taylor lived directly across the street from Weber. The two men were known to be friends, and they were often seen together.

---

that is a felony of the first or second degree." The underlying first degree felony was kidnapping. *See* Ohio Rev. Code § 2905.01(C).

> Although Weber contends that his identification of Shawn Taylor from the photospread merely identified Taylor as someone Weber knew, not as one of the perpetrators, the following testimony of the investigating police officer, on redirect examination, supports a conclusion that Weber identified the "wrong" [Shawn] as one of the perpetrators:
>
> "Q. And in State's Exhibit number 67, the one you testified to, that's the one that [defendant] pointed out to you as being the person he saw beating Chico?
> "A. Yes.
>
> . . . .
>
> Considered in a light most favorable to the State, the evidence presented could have convinced a reasonable trier of fact that all of the elements of Obstructing Justice were proven beyond a reasonable doubt. The jury did not lose its way in believing the State's evidence, and no manifest injustice occurred when Weber was found guilty of Obstructing Justice, Weber's Fifth and Sixth assignments of error are overruled.

Doc. 5-1 at PageID 189-91 (brackets added).

Again, the Ohio Court of Appeals set forth factual findings, which are presumed to be correct, 28 U.S.C. § 2254(e)(1), adequately supporting Petitioner's obstructing justice conviction. Moreover, the Court's independent review of the record confirms that Detective Alan Burke -- the investigator on the case -- testified in detail how Petitioner falsely implicated Shawn Days as the one involved in Mazur's murder. *See* doc. 5-5 at PageID 1038-60. Based on Detective Burke's testimony and viewing the evidence in a light most favorable to the prosecution, the Court finds that a rational trier of fact could have found the elements of obstructing justice beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

In sum, under the *Jackson* standard, all of Petitioner's insufficiency-of-the-evidence claims fail. The Ohio Court of Appeals' decision was not contrary to, nor an unreasonably application of Supreme Court precedent. Grounds Three and Four should be dismissed.

## IV. RECOMMENDATION

Based on the foregoing analysis, it is **RECOMMENDED** that Petitioner's § 2254 petition for a writ of *habeas corpus* be **DISMISSED** with prejudice and this case be **TERMINATED** on the Court's docket.

If Petitioner seeks to appeal, the Court **RECOMMENDS** that Petitioner be **GRANTED** a certificate of appealability on **Ground One** and leave to proceed *in forma pauperis* on appeal. While the Court is confident that Ground One has no merit, the facts underlying this claim are sufficiently unique that the Court believes the conclusion would be debatable among reasonable jurists and that an appeal of Ground One would be taken in good faith.

Reasonable jurists would not, however, disagree with the recommended dispositions on Grounds Two, Three, and Four. Therefore, the Court **RECOMMENDS** that Petitioner be **DENIED** a certificate of appealability on **Grounds Two, Three and Four**.

March 20, 2012 s/ **Michael J. Newman**
United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).